IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


Curtis E. Martin                                    Case No. 2:17-cv-789
637 Pettit Road
Albany, Ohio 45710,

    Plaintiff,                                    COMPLAINT; DEMAND FOR JURY TRIAL

vs.

Myriah Davis
Hocking College
3301 Hocking Parkway
Nelsonville, Ohio 45764,

Penny Payne
Hocking College
3301 Hocking Parkway
Nelsonville, Ohio 45764,

Lea Wandling
Hocking College
3301 Hocking Parkway
Nelsonville, Ohio 45764,

Jeffrey A. White
Hocking College
3301 Hocking Parkway
Nelsonville, Ohio 45764,

and

Betty Young
Hocking College
3301 Hocking Parkway
Nelsonville, Ohio 45764,

Defendants.

1. Plaintiff Curtis E. Martin was employed by Hocking College, a public educational institution, from September 13, 1993, until the time of his discharge on April 7, 2017. Martin held the position of Instructor from the time he began his employment with Hocking College in September 1993 until June 1999. In June 1999, Hocking College designated Martin as a Professor. Martin held this title until the time of his discharge in April 2017. Martin taught courses in the Hocking College School of Public Safety Services.

2. Defendant Myriah Davis was employed by Hocking College during all relevant times, holding the position of Vice President of Academic and Student Affairs. Davis is being sued in her individual capacity.

3. Defendant Penny Payne was employed by Hocking College during all relevant times, holding the position of Commander, School of Public Safety Services. Payne is being sued in her individual capacity.

4. Defendant Lea Wandling was employed by Hocking College during all relevant times, holding the position of Chair, School of Public Safety Services. Wandling is being sued in her individual capacity.

5. Defendant Jeffrey A. White was employed by Hocking College during all relevant times, holding the position of Associate Vice President, Human Resources, Diversity and Campus Relations. White is being sued in his individual capacity. White is also being sued in his official

2

capacity, in that Martin is requesting reinstatement and expungement of negative information.

6.  Defendant Betty Young was employed by Hocking College during all relevant times, holding the position of President.  Young is being sued in her individual capacity.  Young is also being sued in her official capacity, in that Martin is requesting reinstatement and expungement of negative information.

7.  Hocking College has an EMS Program.  It is in the School of Public Safety Services.  The Hocking College EMS Program trains students to become paramedics and related professions.

8.  The Hocking College EMS Program is accredited through two agencies.  One of those agencies is the Ohio Department of Public Safety, Division of Emergency Medical Services (EMS).  This agency is responsible for accreditation of EMS training institutions and programs in concert with the State Board of Emergency, Medical, Fire, and Transportation Services (EMFTS).  The State Board of EMFTS regulates all EMS programs in the State of Ohio, and has the power to shut down an EMS program for noncompliance.  The other agency through which the Hocking College EMS Program is accredited is the Commission on Accreditation of Allied Health Education Programs (CAAHEP).  The CAAHEP accredits EMS training institutions and programs upon the recommendation of the Committee on Accreditation of Educational Programs for the Emergency Medical Services Professions (CoAEMSP).  The CAAHEP, in conjunction with the CoAEMSP, is the accrediting agency for EMS programs throughout the United States, and has the power to withdraw the accreditation for noncompliance.

9.  The Ohio Department of Public Safety, Division of Emergency Medical Services (EMS), on February 23, 2011, issued a directive titled "The National Accreditation of Ohio Paramedic Training Programs."  A copy of this directive is attached as Exhibit A and incorporated herein.

10.  The CAAHEP and the CoAEMSP set out their minimum standards of quality that EMS training institutions and programs must follow in receiving and maintaining their accreditation in a document titled "Standards and Guidelines for the Accreditation of Educational Programs in the Emergency Medical Services Professions."  A copy of this document, referred to as the "Standards and Guidelines," is attached as Exhibit B and incorporated herein.  These Standards and Guidelines are applicable to Hocking College, including but not limited to the following excerpts:  At page 3 of the Standards and Guidelines, it states that "[t]he Sponsor must ensure that the provisions of these Standards and Guidelines are met."  At page 5 of the Standards and Guidelines, it states that "[t]he sponsor must appoint sufficient faculty and staff with the necessary qualifications to perform the functions identified in documented job descriptions and to achieve the program's stated goals and outcomes."  Hocking College at all relevant times was a sponsor as that term is used in the Standards and Guidelines.  Hocking College was required to ensure that the provisions of the Standards and Guidelines were being met but failed to do so, thereby putting the public at risk.

11.  The CoAEMSP, in September 2016, issued its current policies and procedures.  These policies and procedures are set out in a document titled the CoAEMSP "Policies & Procedures," a copy of which is attached as Exhibit C and incorporated herein.  These Policies & Procedures are applicable to Hocking College, including but not limited to the following excerpt:  At page 13 of these Policies & Procedures, in the section titled "Substantive Changes in a Program," it states as follows: "Programs must notify the CoAEMSP of change in sponsorship, change in program location, addition of a satellite location, addition of a distance learning program, change in sponsor administration personnel, or program key personnel.  Substantive changes require submission of supporting documentation, and may require immediate submission of a Progress Report and/or

4

submission of a Self-Study Report and/or scheduling of a site visit."

12.  Ohio statutory and administrative law, including but not limited to Ohio Revised Code §§ 4765.11, 4765.16, and 4765.17, and Ohio Administrative Code §§ 4765-07-02 and 4765-7-13, as well as the directive issued by the Ohio Board of EMFTS on February 23, 2011 (Exhibit A), the Standards and Guidelines for the Accreditation of Educational Programs in the Emergency Medical Services Professions (Exhibit B), and the CoAEMSP Policies & Procedures (Exhibit C), set out some of the Defendants' obligations and/or are pertinent to the Defendants' obligations regarding the Hocking College EMS Program.

13.  On March 14, 2017, Martin contacted the CoAEMSP and the State Board of EMFTS. In his reports to these two bodies, which he communicated by means of two emails on March 14, 2017, Martin reported what he regarded as serious improper practices by Hocking College through its officials, including the Defendants, regarding the Hocking College EMS Program.  A copy of each of the emails is attached to this Complaint as Exhibits D and E and incorporated herein. Martin's email to CoAEMSP was directed specifically to Ruth Crump, Accreditation Services Assistant.  Martin's email to the State Board of EMFTS was directed specifically to John S. Molnar, Chief, Education and Testing.

14.  Less than two hours after Martin sent the email to Molnar, Molnar sent an email to Payne as follows: "Thank you for returning my call.  As per our conversation, below is the email I was referring to.  In particular, I would appreciate some clarification regarding the last two sentences." Payne replied in an email back to Molnar later the same day.  Payne copied Davis on her email.  In her email, Payne referred to Martin's email to Molnar as an "unauthorized email."  A copy of this email stream is attached to this Complaint as Exhibit F and incorporated herein.

15. Martin's emails cited above (Exhibits D and E) addressed matters of public concern, i.e., that Hocking College was failing to discharge its duties regarding EMS services, including the proper education of Hocking College students in the EMS Program.  The public have a legitimate expectation and need that paramedics are fully trained and qualified, and the public concern implicates the consequences of allowing new paramedics on the streets without proper oversight of their qualifications, education and related matters.  Martin was speaking as a citizen regarding these matters of public concern.  He was not speaking pursuant to his official duties as an employee of Hocking College.  Martin's activities in sending the subject emails were protected by the First and Fourteenth Amendments to the United States Constitution.

16. On March 15, 2017, just one day after Martin had sent the emails to Crump and Molnar (Exhibits D and E), Payne told Martin, in the presence of Wandling, that he was to stop and desist from any further contact with anyone outside of Hocking College about the EMS Program.

17.  On March 17, 2017, White sent Martin a letter informing Martin that a disciplinary hearing was scheduled for March 30, 2017, and that Martin was suspended with pay until that date. A copy of the letter is attached as Exhibit G and incorporated herein.

18.  On March 30, 2017, White subjected Martin to a "termination hearing."  Martin was not allowed to record the "hearing."  At the conclusion of the "hearing," White informed Martin that he would present the information to Young and others and then make his determination.

19.  On April 7, 2017, White sent Martin a letter, informing Martin that his employment was terminated effective immediately.  A copy of the letter is attached as Exhibit H and incorporated herein.

20.  It is believed that all the Defendants played a material role in Martin's discharge from

Hocking College.

21. The Defendants' adverse conduct toward Martin, including terminating his employment, was due, at least in material part, to the fact that Martin had made his reports, i.e., the March 14, 2017 emails (Exhibits D and E), to the State Board of EMFTS and the CoAEMSP. This constitutes a violation of Martin's constitutional rights protected by the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. §§ 1983 and 1988. By making his reports to the State Board of EMFTS and the CoAEMSP, Martin was speaking out on matters of public concern.

22. The Defendants' conduct against Martin, including terminating his employment, would deter other individuals of ordinary firmness from taking the protected actions that Martin took.

23 All the Defendants, by means of their acts, omissions, policies, practices and/or customs, punished Martin for speaking out on matters of public concern. Martin suffered retaliation by reporting and alerting others of serious issues involving the Hocking College EMS Program.

24. Martin's interest in speaking out on matters of public concern outweighed any interest the Defendants had regarding their conduct toward him.

25. During all relevant times the Defendants acted under color and pretense of law, to wit: under color of the statutes, ordinances, regulations, customs, and usages of the State of Ohio and Hocking College.

26. All the Defendants acted willfully, knowingly and purposely.

27. Due to the acts of all of the Defendants, Martin suffered and continues to suffer serious emotional distress as well as injury to his reputation, humiliation, and embarrassment.

28. Due to the acts of all of the Defendants, Martin suffered and is still suffering lost wages and benefits.

WHEREFORE, Plaintiff Curtis E. Martin demands judgement against all the Defendants (unless otherwise noted), jointly and severally, as follows:

1. Compensatory damages in the amount of the lost wages and benefits;

2. (defendants White and Young only, in their official capacities) Reinstatement to his former position or in the alternative reasonable front pay;

3. Compensatory damages in the amount of $750,000.00 for emotional distress as well as injury to reputation, humiliation, and embarrassment;

4. (defendants White and Young only, in their official capacities) Expungement of the discharge and related documentation from all Hocking College files, including Martin's personnel file;

5. Punitive damages in the amount of $750,000.00;

6. Attorney's fees, expenses, prejudgment interest, and post-judgment interest; and

7. Such further relief as this Court deems proper.

Respectfully submitted,


*/s/ Thomas A. Sobecki*
Thomas A. Sobecki (0005210)
405 Madison Avenue, Suite 910
Toledo, Ohio 43604
Telephone: 419-242-9908
Fax: 419-242-9937
E-mail: tsobecki@tomsobecki.com
Attorney for Plaintiff
    Curtis E. Martin

8

JURY DEMAND

Martin demands a trial by jury.

/s/ Thomas A. Sobecki
Thomas A. Sobecki
Attorney for Plaintiff
Curtis E. Martin